# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

**INSTASET PLASTICS COMPANY, LLC,**   Case No. 22-47794-tjt
                                       Chapter 11
   **Debtor.**                         Hon. Thomas J. Tucker

---

## FIRST DAY MOTION (A) AUTHORIZING DEBTOR IN POSSESSION TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364; (B) GRANTING LIENS, SECURITY INTERESTS, AND SUPERPRIORITY CLAIMS; (C) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION; (D) MODIFYING THE AUTOMATIC STAY; AND (E) SCHEDULING FINAL HEARING

Instaset Plastics Company, LLC, the Debtor and Debtor-in-Possession in the above-captioned case ("IPC" or "Debtor"), by and through its proposed attorneys, Strobl Sharp PLLC ("Strobl Sharp") files this motion (the "Motion") for immediate entry of an interim order (the "Interim Order") attached as **Exhibit A** granting the following relief:

(i)   authorization to obtain credit and incur debt pursuant to sections 105, 362, 363, and 364 of the Bankruptcy Code in accordance with the Promissory Note & Security Agreement (Demand Revolving Line of Credit), attached as **Exhibit D** (the "RLOC Note") (together with the RLOC Note and the Interim Order, the "DIP Financing Documents"), between the Debtor and WGS Global Services, L.C.,

1

("WGS" and in such capacity, the "DIP Lender"), subject to the terms and conditions set forth herein;

(ii) authorization to grant first priority, valid, perfected and enforceable lien (as defined in section 101(37) of the Bankruptcy Code) and super-priority claim to the DIP Lender, except to the extent provided herein, against all property of the Debtor's estate, pursuant to sections 364 of the Bankruptcy Code, and, except to the extent provided herein, with priority, as to administrative expenses, as provided in section 364 of the Bankruptcy Code;

(iii) use "cash collateral" as the term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral") and, pursuant to sections 361 and 363 of the Bankruptcy Code, grant replacement liens in order to provide adequate protection to The Huntington National Bank ("Huntington Bank") and WGS.

(iv) modification of the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement and perform the terms and provisions of the DIP Financing Documents and the Interim Order; and

(v) scheduling a final hearing.

In further support of this Motion, the Debtor respectfully represents as follows:

2

## STATUS OF THE CASE AND JURISDICTION

1.     On October 5, 2022 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code.

2.     The Debtor has continued in possession of its property and has continued to operate its business as a Debtor-in-Possession pursuant to Section 1107 (a) and 1108 of the Bankruptcy Code.

3.     As of the filing of this Motion, the Court has not appointed the Chapter 11, Subchapter V Trustee.

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2).

5.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a), 361, 362, 363, 364, and 552 of the Bankruptcy Code, Bankruptcy Rule 4001(b) and Local Rule 4001-2.

## BACKGROUND OF THE DEBTOR AND EVENTS LEADING TO THE BANKRUPTCY FILING

6.     The facts and circumstances supporting this Motion are set forth below and set forth in detail by the Affidavit of McGustavus Miller, Jr., Chief Restructuring Officer ("CRO") of Debtor in Support of the Motion (the "Miller Affidavit"), attached as **Exhibit B**.

# **THE PREPETITION SECURED CLAIMS**

7.     Huntington Bank and WGS are creditors with claims in the Debtor's pre-petition cash collateral.   Huntington Bank is the senior secured creditor to Debtor.  Debtor has a long relationship with Huntington Bank and its predecessors in interest, including Chemical Bank and TCF National Bank, with the current unpaid obligations relating to a select set of underlying transactions as follows:

A.     The Note. Debtor is indebted to the Huntington Bank pursuant to an Amended and Restated Promissory Note, dated May 13, 2019, executed by Debtor and WGS as co-borrowers, in favor of Chemical Bank, and now held by Huntington Bank, in the original principal sums of (i) up to $2,000,000.00, as subsequently reduced to the maximum principal sum of $1,250,000.00 ("Huntington Note");

B.     The Loan Agreement.  In conjunction with the extensions of credit and other accommodations between the Debtor, WGS and the Huntington Bank, the following documents, among others, were executed (collectively, the "Loan Agreements"), which set forth additional terms and conditions governing the loan relationship:

B.1     The Loan Agreement.  An Amended, Restated and Consolidated Business Loan Agreement dated May 13, 2019, executed by the Debtor, WGS, and Chemical Bank, successor by merger to Talmer Bank and Trust ("Loan Agreement").   The Loan Agreement by its terms (i) amended, restated, and consolidated prior Loan Agreements between Huntington Bank (through its predecessors in interest) and the Debtor and Huntington Bank (through its predecessors in interest) and WGS, and (ii) cross collateralized and cross defaulted the Debtor's outstanding obligations owed to Huntington Bank with WGS's outstanding obligations owed to Huntington Bank.

B.2     The First Amendment.  A First Amendment to an Amended, Restated and Consolidated Business Loan Agreement and Loan Documents dated June 30, 2020, executed by the Debtor, WGS, and Chemical Bank, a division of TCF National Bank, successor by merger to Chemical Bank, and others.

4

B.3  The Second Amendment.  A Second Amendment to an Amended, Restated, and Consolidated Business Loan Agreement and Loan Documents dated January 25, 2021, executed by Debtor, WGS, and Chemical Bank, a division of TCF National Bank, successor by merger to Chemical Bank, and others.

C.  The Security Agreement.  An Amended and Restated Security Agreement dated January 25, 2021, executed by Debtor in favor of TCF National Bank, successor in interest to Chemical Bank, now held by Huntington Bank, granting a security interest upon all of its assets.

8.  The Debtor's approximate outstanding balances due to Huntington Bank as of the Petition Date is $557,310.81.

9.  WGS's secured interest in Debtor is junior to Huntington Bank.  Debtor is indebted to WGS pursuant to the RLOC Note effective on January 1, 2022, in the original principal sum of up to $2,000,000.00.

10.  The approximate outstanding balance due to WGS as of the Petition Date is $692,745.20 under the RLOC Note.

11.  In late July 2022, Debtor sought the services of Strobl Sharp to assist in determining if a Chapter 11 would afford Debtor the opportunity to restructure or successfully sell its assets.  After a detailed review of the Debtor's financial affairs and operations by DWH Advisors ("DWH"), it was determined that the Debtor would not be able to generate sufficient cash to maintain operations while restructuring.  Consequently, it was decided the prudent course of action would be to go through an orderly liquidation process before the going concern value of Debtor is diminished.

## DEBTOR'S PREPETITION ASSETS

12.     As of the Petition Date, the Debtor's assets were chiefly made up of (1) earned accounts receivable, (2) executory contracts, and (3) inventory and equipment used in the Debtor's operations. The Debtor estimates the fair market value of its assets on the Petition Date as follows:

| | |
|---|---|
| Accounts Receivable: | $ 813,542.14 |
| Personal Property: | $ 510,000.00 |
| Cash on Hand: | $     9,974.00 |
| Total: | $1,333,516.14 |

## DEBTOR IN POSSESSION FINANCING

13.     It is necessary for the Debtor to obtain post-petition financing and to use its operating cash in order to maintain its business and its going concern value for the benefit of creditors.

14.     Prior to the Petition Date, the Debtor entered into an Asset Purchase Agreement with Clarion Technologies, Inc., a Delaware corporation ("Clarion"), for the purchase of certain of Debtor's executory contracts and related inventory (the "Clarion APA"). A copy of the Clarion APA is attached as **Exhibit C.**

15.     In order to ensure that the Debtor is able to continue operating through the Closing Date as set forth in the Clarion APA, WGS has agreed to provide Debtor with DIP Loan on the following terms:

6

(a)  <u>DIP Loan.</u>  To provide Debtor with funds for administrative expenses and to maintain and preserve the value of the executory contracts,  as more fully set forth on the budget (the "<u>Budget</u>") attached hereto as **Exhibit E,** between the date hereof and the Closing Date as defined in the Clarion APA, in order to be able to sell and transfer the same to Clarion pursuant to the terms thereof, WGS agrees, to lend, in its reasonable discretion and in accordance with the Budget, subsequent to the filing of this Bankruptcy Case (the "<u>DIP Loan</u>"), and to advance up to $800,000.00 under the RLOC Note (the "<u>Advances</u>") in the aggregate to Debtor upon Debtor's written requests therefor from time to time.  Each request for Advances shall include details as to how such Advances are to be applied, which uses are subject to the Budget, and if no Event of Default (as hereinafter defined) has occurred and the request for Advance is in accordance with the Budget, WGS will fund such Advance as soon as practicable.  Any material changes in the Budget shall be subject to WGS's prior written approval in its sole and absolute discretion, which will not be unreasonably withheld.  Debtor shall promptly provide any additional financial and other information as WGS may request to enable WGS to evaluate each request for Advances.

(b)  <u>Collateral.</u>  Debtor shall grant to WGS a continuing security interest in and lien upon each of the Debtor's entire right, title and interest in and to all of its Assets, whether now or hereafter existing or now owned or hereafter acquired regardless of where located (collectively, the "<u>WGS Collateral</u>") to secure performance and payment of the Advances and accrued interest thereon. The security interest granted herein shall (i) continue in full force and effect until all of the Advances have been indefeasibly paid in full or the transaction contemplated by Debtor has been consummated with Clarion, and (ii) be subordinate only to existing and properly perfected security interests in the Debtor as of the Petition Date.

(c)  <u>Filings</u>.  The liens and security interests referred to herein shall be deemed valid and perfected by entry of the Interim Order, which shall also approve the DIP Loan.  WGS shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office or to take any other action in order to validate or perfect the lien and security interest granted hereby. The Debtor agrees to execute and deliver any and all

7

documents reasonably requested by WGS to evidence the further Advances, interest rate and other terms hereof and security interests provided for herein although WGS and Debtor agree that no such further written evidence is required.

(d) <u>Priority.</u> Debtor's obligation hereunder, including Debtor's obligation to repay the Advances, shall constitute an allowed superpriority administrative expense in the Bankruptcy Case pursuant to section 364(c)(1), having priority over all administrative expenses of and unsecured claims against Debtor now existing or hereafter arising, of any kind or nature whatsoever, other than the claims of Debtor's counsel including, without limitation, all administrative expenses of the kind specified in, or arising under, sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code.

(e) <u>Negative Covenants of Debtor.</u> To induce WGS to make the Advances pursuant to this Agreement, Debtor hereby covenants and agrees that so long as any of the Advances shall remain outstanding, Debtor shall not:

(i) Enter into any lending or other financing arrangement with a third party without prior written consent thereto by WGS (which consent may be withheld by WGS in its sole and absolute discretion) other than an order allowing use of cash collateral and granting adequate protection to Huntington Bank;

(ii) Other than liens of records filed prior to the Petition Date, create, incur, assume, or suffer to exist any mortgage, deeds of trust, pledge, security interest, encumbrance, lien, or charge of any nature upon or with respect to any of the WGS Collateral; authorize the filing under the UCC of any jurisdiction a financing statement which names the Debtor as the debtor covering any of the WGS Collateral; or sign any security agreement authorizing any secured party thereunder to file a financing statement against any of the WGS Collateral for any indebtedness prohibited herein. Debtor further covenants and agrees not to grant any similar negative pledge to any other lender.

8

(f)   Events of Default. The occurrence of any of the following shall, at the option of WGS, constitute a "DIP Event of Default" with respect to the DIP Loan and this Agreement:

(i)   any representation or warranty of the Debtor made herein or in any other document related hereto or in any other writing given to WGS in connection with the RLOC Note and/or the Advances shall have been misleading or incorrect in any material respect as of the time when the same shall have been made;

(ii)   if an order shall be entered by the Bankruptcy Court dismissing the Debtor's chapter 11 case which does not contain a provision for payment in full in cash of all obligations hereunder upon entry thereof.

(g)   Remedies. Upon the occurrence of a DIP Event of Default, then in addition to any remedies available to WGS, WGS may take one or more of the following remedial steps in any order of priority:

(i)   Declare immediately due and payable the outstanding principal balance of the RLOC Note, together with all accrued and unpaid interest, fees, and other sums or expenses payable thereunder and hereunder and accordingly accelerate payment thereof without presentment, demand, notice of intention to accelerate, notice of acceleration or notice of any other kind, all of which are expressly waived; and

(ii)   Request a hearing to seek authorization to commencement enforcement proceedings, subject to the rights of Huntington Bank.

## USE OF CASH COLLATERAL AND
## ADEQUATE PROTECTION

16.   A potential disruption in services would be devastating to Debtor's ability perform on its executory contracts and to maximize the value of its assets and to successfully liquidate as a going concern.  Consequently, of immediate urgency

9

is the need to fund the Debtor's payroll, including the payroll due to employees due on October 7, 2022, and to satisfy obligations owed to the Debtor's post-petition creditors who will provide the goods and services needed by the Debtor's to perform on the executory service contracts.

17.     The Debtor has delivered an initial 13-week projected budget to Huntington Bank and WGS (the "Budget").  See **Exhibit E.**

18.     The Debtor proposes to use Cash Collateral as outlined in the Budget.

19.     The Debtor has been in contact with counsel for Huntington Bank and WGS regarding the use of Cash Collateral and the proposed DIP Loan.  The Debtor, Huntington Bank, and WGS have negotiated for the consensual use of Cash Collateral and for the approval of the DIP Loan.

20.     Debtor is proposing to provide adequate protection to Huntington Bank and WGS as follows:

    a.  Debtor shall grant Huntington Bank and WGS replacement liens in Debtor's post-petition assets, effective as of the Petition Date, including all accounts receivable, to the same extent, validity and in the same priority as such liens existed on the Petition Date.

    b.  Within two (2) days of the entry of the Interim Order, Debtor will Advance on the RLOC Note and pay the Huntington Note in full.  Upon the failure of the Debtor to Advance on the RLOC Note,  Debtor's right

to use Cash Collateral under the Interim Order shall cease upon the filing of an Affidavit of Default by Huntington Bank and Huntington Bank shall have the right to seek to lift the automatic stay on an expedited basis.

21.     Based on the limited exposure of Huntington Bank and the critical need to protect the Debtor's ability to perform on its executory service contracts thereby preserving the Debtor's estate, the Debtor believes that it should be permitted to use the post-petition Cash Collateral to fund ongoing operations.

## **RELIEF REQUESTED**

22.     By this Motion, Debtor seeks an order pursuant to sections 105(a), 361, 362, 363, 364, and 552 of the Bankruptcy Code: (a) authorizing use of Cash Collateral pursuant to the terms of the Interim Order; (b) granting and affirming to the extent necessary, the adequate protection given to Huntington Bank and WGS, in respect of their interest in the Pre-Petition Collateral; (c) authorizing the DIP Loan set forth herein; and (d) scheduling the Final Hearing on this Motion.

23.     Bankruptcy Rule 4001(d) provides that the court may fix the time within which objections to the approval of an agreement relating to Cash Collateral and adequate protection pursuant to section 363 of the Bankruptcy Code must be filed.  In addition, the Court is empowered to conduct an expedited preliminary

hearing on the Motion and authorize the use of the Operating Cash to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

## BASIS FOR RELIEF

24.    The Debtor will continue to need the use of the Cash Collateral to pay immediate ordinary and necessary expenditures required to maintain its ability to perform under the executory contracts and to continue operations for the benefit of creditors.  These expenditures will enable the Debtor to continue operating in the ordinary course, immediately fund the Debtor's payroll, and preserve the Pre-Petition Collateral.  Without the authority to use Cash Collateral, the Debtor will not have working capital needed to operate, pay employees, or maintain operations necessary to protect the bankruptcy estate.

25.    Pursuant to sections 363(c)(2) and 363(e) of the Bankruptcy Code, the Debtor is permitted to use the Cash Collateral as the Debtor is providing the pre-petition secured creditor with adequate protection.  "Adequate protection" is not defined in the Bankruptcy Code, although 11 U.S.C. § 361 sets forth three (3) non-exclusive methods of how an interest in property may be adequately protected.  *E.g., In re Shriver*, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983).

26.    Adequate protection is aptly described as "a balancing of the debtor's and a creditor's respective harm."  *In re Carson*, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted).  The legislative history of section 361 of the Bankruptcy

12

Code reflects Congress' intent to give the Court flexibility to fashion adequate protection in light of the facts and equitable considerations in each case. *In re O'Connor*, 808 F.2d 1393, 1396–97 (10thCir. 1987); *In re 5-Leaf Clover Corp*., 6 B.R. 463, 466 (Bankr. S.D. W. Va. 1980); *see also In re Harrington & Richardson, Inc*., 48 B.R. 431, 433 (Bankr. D. Mass. 1985) (noting that adequate protection is "a flexible concept which requires a Court to make decisions on a case-by-case basis."). For example, in determining what constitutes "adequate protection," courts must consider not only the interests of the secured creditor whose cash collateral is affected, but the interests of all other creditors in light of the debtor's efforts to enhance the prospects of reorganization or liquidation. *In re O'Connor*, 808 F.2d at 1397–98.

27.     To say that a secured creditor is entitled to adequate protection means that the secured creditor is entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and if it does, that it will receive something as compensation for the decrease. *In re Ramco Well Service, Inc.,* 32 B.R. 525, 531 (Bankr. W.D. Okla. 1983).

28.     Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 15-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy

Rule 4001(b)(2).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Prod. Co*., 47 B.R. 444, 449 (Bankr. D. Colo. 1985); *see also In re Ames Dep't Stores Inc*., 115 B.R. 34, 38 (Bankr. S.D. N.Y. 1990).  After the 15 day-period, the request for use of cash collateral is not limited to those amounts necessary to prevent destruction of the debtor's business.  A debtor is entitled to use cash collateral that it believes prudent in the operation of its business.  *See In re Simasko Prod. Co*., 47 B.R. at 449; *see also In re Ames Dept. Stores, Inc*., 115 B.R. at 36.

29.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).  To use cash collateral without the lienholder's consent and to use other property in which a creditor claims an interest, the debtor is required to provide the lienholder with adequate protection of its interest in the cash collateral and other property in which an interest is claimed.  Adequate protection may be provided by granting a lienholder an additional or replacement lien to the extent that the stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property.  11 U.S.C. § 361(2).

30.    Adequate protection must be determined on a case-by-case basis, in light of the particular facts and circumstances presented, the focus being that which is required to protect a secured creditor from diminution in the value of its interest in the particular collateral during the use period. *In re Ledgmere Land Corp*., 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *Delbridge v. Production Credit Ass'n and Federal Land Bank*, 104 B.R. 824, 827 (E.D. Mich. 1989); *Matter of Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp*., 58 B.R. 725, 736 (Bankr. S.D. N.Y. 1986).

31.    The Debtor is willing to grant Huntington Bank and WGS a replacement lien in the Debtor's post-petition assets, in the same dollar amount as the value of its liens in the Cash Collateral. Such replacement lien and payments constitute adequate protection in accordance with section 361 of the Bankruptcy Code.

32.    In addition, section 354 of the Bankruptcy Code allows a debtor to incur secured post-petition credit and to grant such funding source a superpriority secured claim under such circumstances when a debtor is unable to obtain unsecured credit.

33.    The entry of the Interim Order will enable the Debtor to use its cash resources and fund the Debtor's immediate business needs (including the funding of the Debtor's payroll), as well as the longer term needs of this case as the Debtor's

endeavors to achieve the benefits of a meaningful and successful Chapter 11 liquidation.

34. Conversely, immediate irreparable harm will occur to the Debtor, its customers, employees, creditors, and its estate if the Debtor is not permitted to use Cash Collateral and obtain post-petition secured financing in the form of the DIP Loan. In the absence of a court order authorizing the use of the Cash Collateral and allowing the DIP Loan, the Debtor will be unable to meet payroll and other operating expenses and will be forced to cease operations immediately, rather than continuing efforts to maximize value of its assets for the benefit of its estate and creditors. Thus, an inability to use Cash Collateral would cause a substantial and immediate harm to the detriment of all of the Debtor's creditors and customers. *See In re Marion Street P'ship*, 108 B.R. 218 (Bankr. D. Minn. 1989) (debtor was authorized to use cash collateral to pay operating expenses where the debtor could not operate for even one day without the use of cash collateral).

35. Accordingly, the Debtor respectfully submits that the use of the Cash Collateral and the granting of DIP Loan on the terms set forth in the Interim Order is in the best interest of the Debtor, its customers, estate, creditors and all parties in interest.

## REQUEST FOR FINAL HEARING

36.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests the Court set a date for the Final Hearing.

## WAIVER OF MEMORANDUM OF LAW REQUESTED

37.     As this motion raises no novel issues of fact or law and the legal basis relied upon by the Debtor has been adequately set forth herein, the Debtor requests that the requirement of a separate memorandum of law be waived.

## NOTICE

38.     Notice of this Motion has been given by email, facsimile and/or overnight mail delivery to the United States Trustee for the Eastern District of Michigan, the Chapter 11, Subchapter V Trustee, counsel for Huntington Bank, counsel for WGS, and the twenty largest creditors pursuant to Local Rule 4001-2(d)(l). Given the urgency of funding payroll (which must be funded by September 30, 2022) and the need for an immediate hearing, the Debtor submits that no other or further notice is necessary at this time.

39.     Pursuant to Local Rule 4001-2(c)(4) the Debtor shall serve the following parties with a copy of this Motion and notice of the interim hearing date: (i) the United States Trustee for the Eastern District of Michigan; (ii) the Chapter 11, Subchapter V Trustee; (iii) counsel for Huntington Bank; (iv) counsel for WGS; (v) the parties included on the Debtor's list of twenty (20) largest unsecured

17

creditors; and (vi) those parties that have requested notice pursuant to Bankruptcy Rule 2002 with notice of this Motion.

**WHEREFORE**, the Debtor respectfully request the Court grant the relief requested in this Motion and grant such other and further relief as is just and proper.

Respectfully submitted,

**STROBL SHARP PLLC**


_____/s/ Lynn M. Brimer_____
LYNN M. BRIMER (P43291)
PAMELA RITTER (P47886)
300 E. Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
(248) 540-2300; fax (248) 645-2690
lbrimer@strobllaw.com
pritter@strobllaw.com
Proposed Attorneys for Debtor and
Debtor in Possession

Date:  October 5, 2022
*S&B\85391\001\MOTBRF\SB790636.DOCX

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

| | |
|---|---|
| **INSTASET PLASTICS COMPANY, LLC,** | **Case No. 22-47794-tjt** |
| | **Chapter 11** |
| **Debtor.** | **Hon. Thomas J. Tucker** |

---

## INTERIM ORDER (A) AUTHORIZING DEBTOR IN POSSESSION TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364; (B) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS; (C) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION; (D) MODIFYING THE AUTOMATIC STAY; AND <u>(E) SCHEDULING FINAL HEARING</u>

Upon consideration of the Debtor's Motion for Entry of an Interim Order (the "Interim Order") (a) authorizing Debtor to obtain post-petition secured financing pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 of the Bankruptcy Code (b) granting liens, security interests, and superpriority claims (c) authorizing use of cash collateral and granting adequate protection (d) modifying the automatic stay and (e) scheduling final hearing (the "Final Hearing") on this Motion (the "Motion"), as more fully described in the Motion; and upon consideration of the Affidavit of McGustavus Miller, Jr., Chief Restructuring Officer ("CRO") of Debtor in support of the Motion (the "Miller Affidavit"), and the Court having jurisdiction over this

1

matter pursuant to 28 U.S.C. §§ 157 and 1334 to consider the Motion and the relief requested therein; and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that no other or further notice need be provided; and the Court having determined that entry of this Order is in the best interest of the Debtor is this matter, its customers, its estate, its creditors, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion and attested to in the Miller Affidavit establish just cause for the relief granted herein, therefore;

**THE COURT HEREBY FINDS:**

1. On October 5, 2022 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code.

2. The Debtor has continued in possession of its property and has continued to operate its business as a Debtor-in-Possession pursuant to §§ 1107 (a) and 1108 of the Bankruptcy Code.

A. _____ has been appointed the Chapter 11, Subchapter V Trustee in this matter.

B. The Debtor requires post-petition financing as defined in the Motion in order to maintain its business and its going concern value for the benefit of creditors.

2

C.     The Debtor requires the use of the Cash Collateral as defined in the Motion, for the post-petition maintenance and preservation of its assets, for the post-petition operation of its business, and for payment of post-petition expenses.

D.     The relief requested in the Motion, and authorization for post-petition financing and the use of Cash Collateral in the amounts shown in the budget attached to the Motion as **Exhibit E** (the "Budget"), are necessary, essential, and appropriate for the continued post-petition operation of the Debtor's business and the management and preservation of its assets in order to consummate the sale of its executory contracts and related inventory as outlined in the Asset Purchase Agreement with Clarion Technologies, Inc., ("Clarion") and (the "Clarion APA"), and are otherwise necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing on the Motion.

E.     Pursuant to Local Rule 4001-2(c)(4) the Debtor has served (i) the United States Trustee for the Eastern District of Michigan; (ii) the Chapter 11, Subchapter V Trustee; (iii) counsel for The Huntington National Bank ("Huntington Bank"); (iv) counsel for WGS Global Services, L.C. ("WGS"); (v) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (vi) those parties that have requested notice pursuant to Bankruptcy Rule 2002 with notice of this Motion.

3

F.    Huntington Bank and WGS have stipulated to the entry of this Interim Order.

G.    On the basis of the above and foregoing, it is in the best interests of the Debtor's estate and its creditors that the Debtor be authorized to obtain post-petition financing and to use the Cash Collateral subject to and on the terms and conditions of this Interim Order.

**IT IS HEREBY ORDERED BY THE COURT** as follows:

1.    The Motion is granted.

2.    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Motion.

3.    *Authorization to Obtain Post-Petition Secured Financing.*   The Debtor is hereby authorized on an interim basis, to obtain credit and incur debt in accordance with the RLOC Note between the Debtor and WGS Global Services, L.C. ("WGS") on the following terms:

> (a)    <u>DIP Loan.</u> To provide Debtor with funds for administrative expenses and to maintain and preserve the value of the executory contracts,   as more fully set forth on the budget (the "<u>Budget</u>") attached to the Motion as **Exhibit E,** between the date hereof and the Closing Date as defined in the Clarion APA, in order to be able to sell and transfer the same to Clarion pursuant to the terms thereof, WGS agrees, to lend, in its reasonable discretion and in accordance with the Budget, subsequent to the filing of this Bankruptcy Case (the "<u>DIP Loan</u>"), and to advance up to $800,000 under the RLOC Note (the "<u>Advances</u>") in the aggregate to Debtor upon Debtor's written requests therefor from time to time.  Each request for Advances shall include

4

details as to how such Advances are to be applied, which uses are subject to the Budget, and if no Event of Default (as hereinafter defined) has occurred and the request for Advance is in accordance with the Budget, WGS will fund such Advance as soon as practicable. Any material changes in the Budget shall be subject to WGS's prior written approval in its sole and absolute discretion, which will not be unreasonably withheld. Debtor shall promptly provide any additional financial and other information as WGS may request to enable WGS to evaluate each request for Advances.

(b)     <u>Collateral.</u>     Debtor shall grant to WGS a continuing security interest in and lien upon each of the Debtor's entire right, title and interest in and to all of its Assets, whether now or hereafter existing or now owned or hereafter acquired regardless of where located (collectively, the "<u>WGS Collateral</u>") to secure performance and payment of the Advances and accrued interest thereon. The security interest granted herein shall (i) continue in full force and effect until all of the Advances have been indefeasibly paid in full or the transaction contemplated by Debtor has been consummated with Clarion, and (ii) be subordinate only to existing and properly perfected security interests in the Debtor as of the Petition Date.

(c)     <u>Filings</u>.     The liens and security interests referred to herein shall be deemed valid and perfected by entry of the Interim Order, which shall also approve the DIP Loan. WGS shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office or to take any other action in order to validate or perfect the lien and security interest granted hereby. The Debtor agrees to execute and deliver any and all documents reasonably requested by WGS to evidence the further Advances, interest rate and other terms hereof and security interests provided for herein although WGS and Debtor agree that no such further written evidence is required.

(d)     <u>Priority</u>.     Debtor's obligation hereunder, including Debtor's obligation to repay the Advances, shall constitute an allowed superpriority administrative expense in the Bankruptcy Case pursuant to section 364(c)(1), having priority over all administrative expenses of and unsecured claims against Debtor now existing or hereafter arising, of any kind or nature whatsoever, other than the claims of

5

Debtor's counsel including, without limitation, all administrative expenses of the kind specified in, or arising under, sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code.

(e)     Negative Covenants of Debtor. To induce WGS to make the Advances pursuant to this Agreement, Debtor hereby covenants and agrees that so long as any of the Advances shall remain outstanding, Debtor shall not:

(i)     Enter into any lending or other financing arrangement with a third party without prior written consent thereto by WGS (which consent may be withheld by WGS in its sole and absolute discretion) other than an order allowing use of cash collateral and granting adequate protection to Huntington Bank;

(ii)     Other than liens of records filed prior to the Petition Date, create, incur, assume or suffer to exist any mortgage, deeds of trust, pledge, security interest, encumbrance, lien, or charge of any nature upon or with respect to any of the WGS Collateral; authorize the filing under the UCC of any jurisdiction a financing statement which names the Debtor as the debtor covering any of the WGS Collateral; or sign any security agreement authorizing any secured party thereunder to file a financing statement against any of the WGS Collateral for any indebtedness prohibited herein. Debtor further covenants and agrees not to grant any similar negative pledge to any other lender.

(f)     Events of Default. The occurrence of any of the following shall, at the option of WGS, constitute a "DIP Event of Default" with respect to the DIP Loan and this Agreement:

(i)     any representation or warranty of the Debtor made herein or in any other document related hereto or in any other writing given to WGS in connection with RLOC Note and/or the Advances shall have been misleading or incorrect in any material respect as of the time when the same shall have been made;

(ii)     if an order shall be entered by the Bankruptcy Court dismissing the Debtor's chapter 11 case which does not contain a

6

provision for payment in full in cash of all obligations hereunder upon entry thereof.

(g)   <u>Remedies</u>. Upon the occurrence of a DIP Event of Default, then in addition to any remedies available to WGS, WGS may take one or more of the following remedial steps in any order of priority:

(i)   Declare immediately due and payable the outstanding principal balance of the RLOC Note, together with all accrued and unpaid interest, fees, and other sums or expenses payable thereunder and hereunder and accordingly accelerate payment thereof without presentment, demand, notice of intention to accelerate, notice of acceleration or notice of any other kind, all of which are expressly waived; and

(ii)   Request a hearing to seek authorization to commencement enforcement proceedings, subject to the rights of Huntington Bank.

4.   *Authorization to Use Cash Collateral.* The Debtor is hereby authorized to use Cash Collateral subject to the terms of this Interim Order. The Debtor may use Cash Collateral for necessary post-petition operating expenses and in the amounts described in the Budget, as may be modified, supplemented, or extended from time to time upon the written agreement of the Debtor, Huntington Bank, the Subchapter V Trustee and WGS (or as so modified, supplemented or extended). Cash Collateral shall not be used for any other purpose or in any amounts in excess of the amounts described in the Budget without the prior written consent of the Huntington Bank and WGS. The Debtor is authorized to use Cash Collateral only to pay necessary post-petition operating expenses, which include, but are not limited to, post-petition: employee wages and salaries, payroll taxes, supplies, supplies and

7

materials, insurance premiums, necessary maintenance, utilities, attorney fees, and other general operating and working capital purposes in the ordinary course of Debtor's post-petition operation of the business. This Order does not authorize the Debtor to pay any pre-petition debt.

5. The Debtor is authorized to use up to $800,000.00 through December 3, 2022, in Cash Collateral pursuant to the Budget attached to the Motion as **Exhibit B.**

6. *Adequate Protection.*

    a. *Replacement Liens:* Debtor shall grant Huntington Bank and WGS replacement liens in Debtor's post-petition assets, effective as of the Petition Date, including all accounts receivable, to the same extent, validity, and in the same priority as such liens existed on the Petition Date. Other than interests granted to Huntington Bank and WGS in the various security instruments, no liens are granted in any Chapter 5 causes of action or their proceeds by the Debtor to Huntington Bank or WGS.

    b. *Adequate Protection Payments*: Within two (2) days of the entry of the Interim Order, Debtor will Advance on the RLOC Note and pay the Huntington Note in full. Upon the failure of the Debtor to Advance on the RLOC Note, Debtor's right to use Cash Collateral under the Interim

8

Order shall cease upon the filing of an Affidavit of Default by Huntington Bank and Huntington Bank shall have the right to seek to lift the automatic stay on an expedited basis.

c. The automatic stay under Section 362(a) of the Bankruptcy Code is modified to the extent necessary to implement the terms of this Order.

7. *Notice:* Within 24 hours of the entry of this Interim Order, the Debtor shall serve by first class U.S. mail, postage prepaid, a copy of the Motion and this Interim Order upon the following: (i) the Office of the United States Trustee for the Eastern District of Michigan; (ii) the Chapter 11, Sub-Chapter V Trustee (iii) counsel for Huntington Bank; (iv) counsel for WGS; (v) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (vi) those parties that have requested notice pursuant to Bankruptcy Rule 2002.

8. The deadline to file an objection to this Interim Order is 14 days from the entry of this Order, except that an official committee may file objections within 14 days after it is served with the entered order. If an objection is timely filed, the final hearing will be held. If no objection is timely filed, the interim or preliminary order may become a final order. Any objection to the continued effectiveness of this Interim Order or to a final order under similar terms to those terms set forth herein shall be in writing and shall be filed with the Court and served on each of the follow persons or entities:

(a)     Counsel for the Debtors: Strobl Sharp PLLC, 300 E. Long Lake Rd., Suite 200, Bloomfield Hills, MI  48304. Attention: Lynn Brimer;

(b)     The Chapter 11, Sub-Chapter V Trustee;

(c)     Counsel for Huntington Bank, Douglas C. Bernstein, Plunkett Cooney, 38505 Woodward Ave., Suite 100, Bloomfield Hills, MI 48304.

(d)     Counsel for WGS, Attn: Anthony Mammina, Mammina and Ajlouny PC, 370 E. Maple Road., Ste. 230, Birmingham, MI 48009-6303;

(e)     Office of the United States Trustee, 211 W. Fort Street, Suite 700, Detroit, Michigan 48226.

9.     *Final Hearing.*  A final hearing on the Motion will be held on the _____, at: _____ ____. m., as the same may be continued or adjourned by the Bankruptcy Court.

This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Interim Order.