# EXHIBIT C

## ASSET PURCHASE AGREEMENT

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "<u>Agreement</u>") is made and entered into this ___ day of October, 2022, by and between **Instaset Plastics Company, LLC,** a Michigan limited liability company having offices located at 10101 Marine City Hwy, Anchorville, Michigan 48023 ("<u>Seller</u>"), and **Clarion Technologies, Inc.,** a Delaware corporation having offices located at 501 South Cedar Street, Greenville, Michigan 48838 ("<u>Purchaser</u>").

## RECITALS

A.     Seller produces and processes plastic injection molding parts and products for many industries including automotive (the "<u>Business</u>").

B.     Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, the Purchased Assets (as defined below) and assume the Assumed Liabilities (as defined below) upon the terms and conditions hereinafter set forth in this Agreement.

C.     Seller intends to commence a Chapter 11 bankruptcy filing (a "<u>Bankruptcy Case</u>") in the United States Bankruptcy Court for the Southern District of Michigan (the "<u>Bankruptcy Court</u>") no later than October 5, 2022 (or such earlier time as the case is filed, the "<u>Petition Date</u>") to effectuate the transactions contemplated by this Agreement in a private sale pursuant to 11 U.S.C. § 363 ("<u>Section 363</u>") of 11 U.S.C. § 101 – 1532 (the "<u>Bankruptcy Code</u>"), and the execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth in this Agreement are subject, among other things, to the entry of the Sale Order (as defined in this Agreement) by the Bankruptcy Court.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, the Parties agree as follows:

## AGREEMENT

1.     SALE AND PURCHASE OF ASSETS; EXCLUDED ASSETS.

1.1     Purchased Assets. On the terms and subject to the conditions herein expressed, Seller agrees to sell, convey, transfer, assign, set over and deliver to Purchaser on the Closing Date (defined below), and Purchaser agrees to purchase and accept, all of the right, title and interest in and to all assets and interests of the Seller in the following (collectively, the "<u>Purchased Assets</u>"):

(a)     Seller's executory contracts as listed on **Exhibit A** as properly assigned to, and accepted by, Purchaser (collectively, the "<u>Designated Contracts</u>");

(b)     all files, data, documents, instruments, papers, books and records of every kind (in whatever form or medium) relating to the Designated Contracts, all records and lists pertaining to the Designated Contracts, and originals or copies of all files, reports, and drawings maintained by Seller in connection with the Designated Contracts; provided, however, if necessary that Purchaser shall make the documents and records available to

Contracts; provided, however, if necessary that Purchaser shall make the documents and records available to Seller upon reasonable request in order to allow the Seller to fulfill its duties as a debtor in possession in the Bankruptcy Case (as defined below); and

(c)     all inventory relating to the Designated Contracts on the Closing Date (the "Inventory"). Attached hereto as **Exhibit B** is a schedule of the inventory as of the date of this agreement. Buyer understands that the Inventory shall fluctuate due to Seller's use and replacement of Inventory in its ordinary course of operations.

1.2     Excluded Assets.     Notwithstanding anything else contained in this Agreement, the following assets shall not constitute Purchased Assets and shall not be acquired by Purchaser (collectively, the "Excluded Assets"):

(a)     all cash and bank deposits of Seller;

(b)     all accounts receivable of Seller;

(c)     any contracts not identified as Designated Contracts;

(d)     any inventory not related to the Designated Contracts.

2.     PURCHASE PRICE.

2.1     At Closing, Purchaser agrees to pay as the purchase price (the "Purchase Price") for the Purchased Assets the sum of $250,000.00 plus (i) Seller's cost of the Inventory related to the Designated Contracts on the Closing Date and (ii) assumption of the Assumed Liabilities as set forth herein.

(a)     The sum of $25,000.00 earnest money (the "Deposit"), shall be paid by Purchaser to Purchaser's counsel to be held in an escrow IOLA account upon Purchaser's execution hereof.

(b)     The remaining balance of the Purchase Price, subject to any closing adjustments and pro-rations and after crediting the Deposit, shall be paid in cash or immediately available funds at the Closing.

2.2     Purchaser shall have the right, in its sole discretion, to allocate the Purchase Price for the Purchased Assets for tax purposes and otherwise.

3.     LIABILITIES.

3.1     Assumed Liabilities. On the terms and subject to the conditions herein expressed, Purchaser shall assume and thereafter will pay, perform and discharge in accordance with their respective terms, as and when due, only the following (collectively, the "Assumed Liabilities"):

2

(a)     Performance obligations under the Designated Contracts arising after the Closing Date (excluding any liabilities of Seller attributable to a breach or default by Seller thereunder prior to Closing).

3.2     Excluded Liabilities. Other than the Assumed Liabilities, Purchaser will not assume and shall not become liable to pay, perform or discharge any liabilities of Seller whatsoever, including but not limited to any liability relating to any of the Purchased Assets, and also including but not limited to:

(a)     Any of Seller's liabilities or obligations under this Agreement and any Exhibits or Schedules attached hereto;

(b)     Any of Seller's liabilities or obligations for expenses or fees incident to or arising out of the negotiation, preparation, approval or authorization of this Agreement or the consummation of the transactions contemplated herein, including without limitation the fees and expenses of Seller's attorneys, accountants, brokers, and other advisors;

(c)     Any liabilities pursuant to any contract that is not identified as a Designated Contract; and

(d)     Any liabilities associated with or with respect to parts and products sold by Seller under the Designated Contracts prior to the Closing Date.

4.     DESIGNATED CONTRACTS - REJECTION AND ASSUMPTION.

4.1     Purchaser shall identify Seller's executory contracts to be assumed and assigned through the bankruptcy process on **Exhibit A,** the Designated Contracts. Seller shall provide for the assumption and assignment to Purchaser of the Designated Contracts through the Sale Motion as set forth below.

5.     Intentionally Omitted.

6.     TERMINATION.

6.1     This Agreement may be terminated and the transactions contemplated hereby may be abandoned at any time prior to the Closing (the effective date of such termination, the "Termination Date"):

(a)     by mutual written consent of Purchaser and the Seller;

(b)     immediately upon receipt of Notice from Purchaser or the Seller, if (i) any of the conditions in Sections 16, 17.1 and 24 (if Purchaser is the terminating Party) or Section 17.2 and 24 (if Seller is the terminating Party) have not been satisfied by the earlier of October 31, 2022 if the Bankruptcy Court grants the Seller an expedited hearing on the Sale Motion filed pursuant to Section 16.1 or November 16, 2023 in the event the Bankruptcy Court denies Seller's request for an expedited hearing (the "Outside Date") and the date on which such events were to have occurred pursuant to this

3

Agreement, or (ii) satisfaction of any such conditions is or becomes impossible, in each case other than through the failure of the terminating Party to comply with such Party's obligations under this Agreement by such date;

        (c)      by Purchaser if there shall be any material breach by the Seller of any representation or warranty or any covenant or agreement contained in this Agreement, and which breach cannot be cured or has not been cured within five (5) Business Days after the giving of written Notice of such breach; or

        (d)      by Purchaser or the Seller, if Purchaser is not approved by the Bankruptcy Court as the purchaser of the Purchased Assets.

        6.2      Upon any termination, the Party effecting such termination shall deliver Notice thereof to the other Party as promptly as practicable.

        7.      <u>DEPOSIT</u>.  The Deposit is not and shall not be deemed to be property of the Seller or the bankruptcy estate of the Seller and shall only be paid to Seller pursuant to this Agreement.  If the Closing is completed in accordance with the terms of this Agreement, Seller shall apply the Deposit to the balance of the Purchase Price at Closing.  If Purchaser defaults under this Agreement, beyond any applicable notice and/or grace period, and fails or refuses to close the sale as provided in this Agreement (a "<u>Purchaser Default</u>"), then Seller shall retain the Deposit as liquidated damages for Purchaser's failure to close this sale in accordance with the terms of this Agreement.  If the Closing is not completed for any reason other than a Purchaser Default, then the Deposit shall be returned to Purchaser pursuant to Section 16.3 if applicable or within 10 business days after the earliest to occur of (i) issuance of a notice under Section 6 above or (ii) the Parties have not closed by November 23, 2022.

        8.      <u>BROKERS' FEES</u>.  Each Party warrants that it has not dealt with any broker or other person in connection with the sale of the Purchased Assets in any manner that could give rise to a claim for commission or similar fee.  Each Party agrees to indemnify and hold the other harmless against and from all claims or other commissions and other fees with respect to the procurement and closing of this Agreement made by any person with whom they have dealt other than as provided herein.

        9.      <u>CLOSING</u>.  The date for closing the sale and purchase of the Purchased Assets (the "<u>Closing</u>") shall be the third business day after the Closing Conditions set forth in Section 17 have been satisfied or waived ("<u>Closing Date</u>").  The Closing shall be held at the offices of Seller's attorney and may be done by mail in escrow or at such other time, date or place as the Parties may mutually agree.

        10.      <u>CONVEYANCE OF PURCHASED ASSETS.</u>  Seller shall deliver the following to Purchaser:

        (a)      At closing Seller shall execute and deliver any and all documents explicitly required by this Agreement to be delivered by Seller; and

        (b)      Seller shall release to Purchaser and the related customer all customer tooling and auxiliary support equipment (such as gauges, fixtures and

4

accessories as set forth on **Exhibit E**) in Seller's possession with respect to the Designated Contracts immediately upon settlement of its account with Seller by such customer.

11.   COVENANTS.

11.1   Conduct of Business by Seller Pending the Closing.  Between the date of execution of this Agreement and the Closing Date, Seller will operate its Business in the ordinary course of business in a manner consistent with prior practice to the extent such prior practice is, within Seller's best business judgment, permissible under and consistent with the Bankruptcy Code, and will use reasonable efforts to preserve its relationships with and the goodwill of its customers and suppliers in a manner so as to preserve the value of the Purchased Assets.

11.2   Access and Information.  Seller shall afford to Purchaser and each of its financial advisors, legal counsel, accountants, consultants, financing sources, and other authorized representatives, access during normal business hours throughout the period prior to the Closing to all books and records, assets and properties, and personnel of Seller that pertain to the Purchased Assets or the Assumed Liabilities and, during such period, shall furnish as promptly as practicable to Purchaser any and all such information as Purchaser may reasonably request pertaining to the Purchased Assets or the Assumed Liabilities (including, without limitation, copies of Designated Contracts and the books and records of Seller).

11.3   Additional Matters.  On the terms and subject to the conditions of this Agreement and related to the Designated Contracts, each of the parties agrees to use commercially reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper, or advisable under applicable Laws and regulations to consummate and make effective the transactions contemplated by this Agreement, including using all commercially reasonable efforts to obtain all necessary consents required under this Agreement.

11.4   Further Assurances.  After the Closing Date, Seller, its Affiliates and Purchaser will each use all commercially reasonable efforts to execute and deliver such other instruments of conveyance, transfer or assumption, as the case may be, and take such other actions as may be reasonably requested to implement more effectively, the conveyance and transfer of the Purchased Assets to Purchaser and the assumption of the Assumed Liabilities by Purchaser.

12.   Intentionally omitted.

13.   POSSESSION.   Seller shall deliver possession of the Purchased Assets at Closing.

14.   AS-IS, WHERE-IS.  Subject to the terms of this Agreement, Purchaser shall purchase the Purchased Assets in their present condition, **"AS-IS, WHERE-IS,"** without reliance upon any representation, warranty, opinion or statement of Seller, or any agent of Seller, except as otherwise stated in this Agreement, and, further, Purchaser affirmatively represents that

5

neither Seller nor anyone on behalf of Seller has expressly or impliedly made or given any such representation, warranty, opinion or statement to Purchaser or anyone on Purchaser's behalf not otherwise stated in this Agreement. Purchaser acknowledges that this Section is a material part of the consideration to be received by Seller under this Agreement, and that Seller has agreed to the Purchase Price by reason of such understanding. This representation by Purchaser shall survive Closing.

15. REPRESENTATIONS AND WARRANTIES OF SELLER.

15.1 Other. Notwithstanding anything contained to the contrary herein, Seller represents as follows:

(a) Seller has good and marketable title to the Purchased Assets, free and clear of any and all liens or encumbrances;

(b) There is no action, proceeding or investigation pending or, to the best of Seller's knowledge and belief, contemplated or threatened by or against Seller which would affect the Seller's ability to sell the Purchased Assets as provided in this Agreement other than as identified on **Exhibit C**. To the best of Seller's knowledge, there are no bankruptcy proceedings pending, contemplated or threatened by or against Seller, except for the Bankruptcy Case to be filed and reflected at Section 16.1 herein.

(c) No person or entity has any right, option or right of first refusal to purchase the Purchased Assets.

(d) The Seller is a Michigan limited liability company duly formed and in good standing under the laws of the State of Michigan and has the requisite power and authority to enter into and to perform the terms of this Agreement. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all requisite action of the Seller. The Seller is not subject to any law, order, decree, restriction or agreement which prohibits or would be violated by this Agreement or the consummation of the transactions contemplated hereby. Seller has taken all necessary action to authorize the execution, delivery and performance of this contract and has the power and authority to execute, deliver and perform this contract and consummate the transaction contemplated hereby. Subject to approval of this Agreement by the Bankruptcy Court (as hereinafter defined) and entry of the Sale Order, this contract and all obligations of Seller hereunder are the legal, valid and binding obligations of Seller, enforceable in accordance with the terms of this contract.

(e) Neither the execution and delivery of this Agreement, nor the closing of the transaction contemplated hereby, violate any order or decree of any court, or any agreement to which the Seller is a party or to which any of the assets of Seller are subject.

6

(f)     Complete documentation of all Designated Contracts have been provided to Purchaser, and all Designated Contracts are, as of the date hereof, valid and in full force and effect and are not terminated or in breach, or alleged by the counter party to be terminated or in breach.

16.     BANKRUPTCY CONDITIONS.

16.1     Seller shall file the Bankruptcy Case on or before the Petition Date and shall have duly filed with the Bankruptcy Court and served in accordance with Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure on the Petition Date all necessary "first day" or other motions required for Seller to continue to operate in the ordinary course of business; within two (2) business days of the Petition Date shall have filed a motion (the "Sale Motion") with a request for an expedited hearing, in form and substance reasonably satisfactory to the Purchaser, seeking an order approving the consummation of the transactions contemplated by this Agreement, via private sale, "free and clear" of all liens, claims, encumbrances and interests, including but not limited to any successor liability in the form as attached hereto at **Exhibit D** (the "Sale Order"); The Bankruptcy Court shall enter the Sale Order within twenty-six (26) days of the Petition Date, provided, however, that in the event an objection to the Sale Order is filed with the Bankruptcy Court, within two business days of the hearing on the Sale Motion.

16.2     Sale Order.

(a)     The Sale Order entered by the Bankruptcy Court must be satisfactory to Purchaser, in its sole discretion, and among other things must:

(i)     approve the terms and conditions of this Agreement and the sale of the Purchased Assets to Purchaser;

(ii)     authorize the Seller to enter into the transactions contemplated by this Agreement;

(iii)     provide that Purchaser shall have no obligations to cure any pre-closing defaults by Seller relating to the Purchased Assets and that the exclusive remedy available to any party asserting any such pre-closing default shall be to pursue a claim against the Seller in the Bankruptcy Court;

(iv)     authorize the sale of the Purchased Assets to Purchaser pursuant to this Agreement and § 363(b) and (f) of the Bankruptcy Code including the assumption and assignment of the Designated Contracts pursuant to §365(a), free and clear of all liens, claims and encumbrances against or other "interests" in the Purchased Assets within the meaning of § 363(f) of the Bankruptcy Code and otherwise free and clear of all other claims, encumbrances, liabilities and interests and also free and clear of claims for successor liability with all liens, claims and encumbrances transferred to the proceeds on the rank and priority existing as of the date Seller files the Bankruptcy Case (the "Petition Date");

(v)     provide that the order is effective as a termination of any

7

lien, claim, encumbrance, liability or interest in or on the Purchased Assets and that no further filings are necessary to give effect to Section 16.2(iv) above; and, notwithstanding the fact that no such filings will be necessary as a result of the foregoing, authorize the parties in interest to file any termination statements required to terminate of record any liens on the Purchased Assets;

        (vi)    provide that appropriate notice of sale of the Purchased Assets "free and clear" of all liens, claims, encumbrances and interests, including but not limited to any successor liability, has been provided to all persons and entities holding existing claims, causes of action, claims, interests or liens of any kind;

        (vii)   authorize   Seller   to   consummate   the   transactions contemplated by this Agreement;

        (viii)   determine Purchaser is a good faith purchaser and is entitled to the protections of Section 363(m) of the Bankruptcy Code;

        (ix)    waive any stay that would otherwise be applicable pursuant to Bankruptcy Rules 6004(h)); and

        (x)    if possible, determine that the transactions contemplated by this Agreement are exempt from all State, City and County mortgage, transfer, stamp or other similar taxes pursuant to 11 U.S.C. § 1146(c).

    16.3   <u>Protections</u>. Unless ordered otherwise by the Bankruptcy Court, the Purchaser will not solicit any competing bids from any other party, either prior to or after the Petition Date. In the event ordered by the Bankruptcy Court to solicit bids, such solicitation shall be pursuant to bidding procedures acceptable to the Purchaser. In the event that Seller sells the Purchased Assets to any other party pursuant to any applicable Bankruptcy Court order which the Bankruptcy Court deems to be a higher and better offer, then within ten business days of entry of such order Seller shall (i) return the Deposit to the Purchaser and (ii) pay Purchaser a break-up fee in the amount of 3% of the gross value of the purchase price paid by the other purchaser. Purchaser shall be allowed in the Bankruptcy Case a priority administrative expense claim in the amount of the break-up fee until paid.

    16.4   <u>Final Order</u>: "<u>Final Order</u>" means an order as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, move for a stay pending appeal, petition for certiorari, reargue, or rehearing shall have been waived in writing in form and substance satisfactory to the Purchaser or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been denied by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been taken and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

## 17. CLOSING CONDITIONS.

17.1  Conditions to Obligations of Purchaser. The obligation of Purchaser to consummate the Closing is subject to the satisfaction (or waiver by Purchaser) of the following further conditions:

(a)  Seller shall have timely filed the Bankruptcy Case and the Bankruptcy Court shall have timely entered a satisfactory Sale Order consistent with Section 16.2 above in the Bankruptcy Case;

(b)  Seller shall have performed in all material respects all of its obligations and covenants hereunder required to be performed by Seller on or prior to the Closing Date;

(c)  the representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects at and as of the Closing Date, as if made at and as of such date (or to the extent such representations and warranties speak as of an earlier date, they shall be true and correct as of such earlier date);

(d)  Seller shall convey good and marketable title to the Purchased Assets, free and clear of all liens, claims, encumbrances and interests;

(e)  As of Closing, Purchaser shall have received written consent to the assumption and assignment of the Designated Contracts by each customer subject to the Designated Contracts, respectively, which is satisfactory to Purchaser in its sole discretion; and

(f)  There shall have occurred, since the date hereof, no event, change, occurrence, fact condition or effect that has or would reasonably be expected to have, individually or in the aggregate with respect to any event, change, occurrence, fact condition or effect, a materially adverse effect on the Purchased Assets.

17.2  Conditions to Obligations of Seller. The obligation of Seller to consummate the Closing is subject to the satisfaction (or waiver by Seller) of the following further conditions:

(a)  The Bankruptcy Court shall have entered the Sale Order in the Bankruptcy case in form and substance acceptable to Seller and Purchaser (including a provision waiving any stay that would otherwise be applicable pursuant to Bankruptcy Rule 6004(h));

(b)  Purchaser shall have performed in all material respects all of its obligations hereunder required to be performed by it on or prior to the Closing Date; and

(c)  the representations and warranties of Purchaser contained in this Agreement shall be true and correct in all material respects at and as of the Closing Date, as if made at and as of such date (or to the extent such representations and warranties

9

speak as of an earlier date, they shall be true and correct in all material respects as of such earlier date).

18.    NO SUCCESSOR LIABILITY.

      18.1   Purchaser is not and shall not be deemed to: (i) be the successor of Seller, (ii) have, de facto, or otherwise, merged with or into Seller, (iii) be a mere continuation or substantial continuation of Seller or the enterprise(s) of Seller, or (iv) be liable for any acts or omissions of Seller in the conduct of the Business or arising under or related to the Purchased Assets other than as expressly set forth in this Agreement.

      18.2   Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, Purchaser shall not be liable for any bankruptcy claims, other claims, written notices, causes of action, proceedings, complaints, investigations or other proceedings against Seller or any of its predecessors or affiliates, and Purchaser shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date.

      18.3   The parties agree that the provisions substantially in the form of this Section shall be reflected in the Sale Order.

    19.    NOTICES.  Except as otherwise provided in this Agreement, all notices, demands, requests, consents, approvals or other communications (for the purposes of this Section collectively referred to as "Notices") required or permitted to be given hereunder or which are given with respect to this Agreement, in order to constitute effective notice to the other party, shall be in writing and shall be deemed to have been given when (a) personally delivered with signed delivery receipt obtained, (b) when transmitted by facsimile machine, if followed by the giving of, pursuant to one of the other means set forth in this Section 19 before the end of the first Business Day thereafter, printed confirmation of successful transmission to the appropriate facsimile number of the addressee listed below as obtained by the sender from the sender's facsimile machine, (c) upon receipt, when sent by prepaid reputable overnight courier, (d) three (3) days after the date so mailed, if sent by certified mail, return receipt requested, postage prepaid, or (e) transmitted by electronic mail (with hard copy to follow) which shall be effective when the recipient, by an email sent to the email address for the sender stated in this Section 19 or by a notice delivered by another method in accordance with this Section 19, acknowledges having received that email (with an automatic "read receipt" not constituting acknowledgment of an email for purposes of this Section 19) , in all cases addressed to the party to be notified at its address set forth below or to such other address as such party shall have specified most recently by like Notice, as follows:

| Seller, to: | Purchaser, to: |
|---|---|
| Instaset Plastics Company, LLC | Clarion Technologies, Inc. |
| 10101 Marine City Hwy | 501 South Cedar St. |
| Anchorville, MI 48023 | Greenville, MI 48838 |
| Attn: Christopher Goetz | Attn: John Brownlow, President |
| Phone: | Phone: CELL number |
| Fax: | Fax: ACE Fax |
| Email: | Email: |
| Copy, to: | Copy, to: |
| Lynn M. Brimer | Michael G. Wooldridge |
| Strobl Sharp PLLC | Varnum LLP |
| 300 E. Long Lake Road, Ste. 200 | 333 Bridge Street, N.W., Suite 1700 |
| Bloomfield Hills, MI 48304 | Grand Rapids, MI 49504 |
| Phone: 248-205-2772 | Phone: 616-336-6000 |
| Fax: 248-645-2690 | Fax: 616-336-7000 |
| Email: lbrimer@stroblpc.com | Email: mgwooldridge@varnumlaw.com |

20.     BENEFIT.

20.1     This Agreement shall be binding upon and inure to the benefit of Seller and Purchaser and their respective successors and assigns.

20.2     This Agreement is made for the sole benefit of the parties hereto and, except as expressly provided by this Agreement, no other person or party shall have any rights, remedies or legal interest of any kind under or by reason of this Agreement.

21.     ENTIRE AGREEMENT; AMENDMENTS; COUNTERPARTS.     This Agreement (including the Schedules and Exhibits hereto) sets forth the entire agreement among the Parties with respect to the subject matter hereof and may be amended only by a writing executed by Purchaser and Seller. This Agreement may be executed in counterparts, each of which when taken together shall constitute an original. This Agreement may be executed by facsimile, and such facsimile signature shall be treated as an original hereunder. This Agreement shall become effective when each Party hereto shall have received a counterpart hereof signed by the other Party hereto.

22.     TIME OF THE ESSENCE.     Time shall be of the essence with respect to the performance by the Parties of their respective obligations hereunder.

23.     EXPENSES.     Except as otherwise provided herein, the parties shall be liable for expenses as follows:

(a)     Fees and Expenses.     As to all other customary closing costs and expenses, each party shall pay its respective expenses, taxes, charges and liabilities incurred in connection with or arising out of the exercise of their respective rights or obligations under this Agreement and the transfer of title from Seller to Purchaser.

11

24. DESTRUCTION OF PROPERTY.

24.1 Upon acceptance of this Agreement by Seller, the risk of loss or damage to the Purchased Assets shall be borne by the Seller until Closing, during which time Seller shall continue to insure the Purchased Assets against loss, damage or destruction by fire with extended coverage endorsement.

24.2 If the damage to the Purchased Assets, as determined by the adjuster, is less than or equal to 25% of the Purchase Price, then the parties shall proceed with Closing of the Purchased Assets and Seller shall assign to Purchaser all of Seller's rights in and to the insurance recovery due by reason of such loss or damage to the Purchased Assets, with no reduction in the Purchase Price.

24.3 If the damage to the Purchased Assets, as determined by the adjuster, exceeds 25% of the Purchase Price, then Purchaser may elect to:

(a) rescind this Agreement by giving Seller written notice of such election within twenty (20) days after the occurrence of such damage, loss or destruction, or the date of Closing, whichever is sooner, whereupon the Deposit shall be refunded to Purchaser and the parties shall have no further rights or obligations hereunder; or

(b) proceed with Closing of the Purchased Assets in which event Purchaser shall choose to either (i) receive a credit against the Purchase Price equal to the loss or damage sustained by the Purchased Assets, as determined by the insurance adjuster for Seller's carrier; or (ii) have Seller assign to Purchaser all of Seller's rights in and to the insurance recovery due by reason of such loss or damage to the Purchased Assets, with no reduction in the Purchase Price.

25. ASSIGNMENT. Purchaser shall have the absolute right to assign this Agreement to an affiliate. Purchaser may assign, mortgage or sell this Agreement or its rights hereunder to an entity which is not an affiliate, by providing Seller not less than five (5) Business Days' prior written notice of such assignment prior to the date of Closing, provided the Purchase Price and all terms hereunder are unaffected by such assignment.

26. DEFAULT; REMEDIES.

26.1 If Seller has performed or is ready, willing and able to perform all obligations required by this Agreement and Purchaser shall fail or refuse to perform this Agreement within the time and in the manner provided, then Seller may elect to terminate this Agreement by giving written notice thereof to Purchaser, and upon giving such notice, Seller will be entitled to actual damages.

26.2 Purchaser, in addition to all other remedies set forth in this Agreement, may seek specific performance of this Agreement in the event of default by the Seller.

27. MISCELLANEOUS.

12

27.1　Captions, Headings, Interpretation.　The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof. The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.　Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation."　In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of authorship of any provisions of this Agreement.

27.2　Amendment And Modification.　This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

27.3　Waiver.　No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

27.4　Governing Law.　This Agreement shall be governed by and construed in accordance with the internal laws of the State of Michigan and any applicable provisions of the Bankruptcy Code, without regard to the principles of conflicts of law that would provide for application of another law.

27.5　Effective Date.　As used herein, the term "Effective Date" shall mean the last date of signature by the parties hereto.

27.6　Bulk Sales.　Purchaser and Seller hereby waive compliance with any bulk sales or other similar Laws in any applicable jurisdiction in respect of the transaction contemplated by this Agreement.

*[signature page follows]*

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first written above, in multiple counterparts, each of which shall be deemed an original and all of which shall evidence but one agreement.

**INSTASET PLASTICS COMPANY, LLC**
a Michigan limited lability company

By: _____
Christopher Goetz
Sole Member

Signed on: October _____, 2022

**CLARION TECHNOLOGIES, INC.,**
a Delaware corporation

By: _____
John Brownlow
President

Signed on: October 5, 2022

20068587.2

14

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first written above, in multiple counterparts, each of which shall be deemed an original and all of which shall evidence but one agreement.

**INSTASET PLASTICS COMPANY, LLC**
a Michigan limited lability company

By: _____
      Christopher Goetz
      Sole Member

Signed on: October 5, 2022

**CLARION TECHNOLOGIES, INC.,**
a Delaware corporation

By: _____
      John Brownlow
      President

Signed on: October _____, 2022

20068587.2

14

## EXHIBIT A – DESIGNATED CONTRACTS

## SEE FOLLOWING PAGES

## ADLER PELZER GROUP

| Name | Order Number |
|---|---|
| Scheduling Agreement | 5500021749 |
| Scheduling Agreement | 5500017925 |
| Scheduling Agreement | 5500017930 |
| Scheduling Agreement | 5500017926 |
| Scheduling Agreement | 5500017928 |
| Scheduling Agreement | 5500015891 |
| Scheduling Agreement | 5500017927 |

## HUTCHINSON ANTIVIBRATION SYSTEMS, INC,

| Name | Order Number |
|---|---|
| Purchaser Order | P078808 |
| Purchaser Order | P079779-00 |
| Purchaser Order | P079724-03 |

**INTEVA PRODUCTS, LLC**

| Name | Order Number |
|------|------|
| Purchaser Order | THQ028258 |
| Purchaser Order | THQ028781 |
| Purchaser Order | THQ027484 |
| Purchaser Order | THQ027482 |
| Purchaser Order | THQ027481 |
| Purchaser Order | THQ027907 |
| Purchaser Order | THQ027565 |
| Purchaser Order | THQ023982 |
| Blanket Purchase Order | UM3000147 |
| Blanket Purchase Order | UM1008767 |
| Purchaser Order | THQ026312 |
| Blanket Purchaser Order | DSU000754 |
| Blanket Purchaser Order | ADR011187 |
| Purchaser Order | VAN009431 |
| Purchaser Order | THQ028482 |
| Purchaser Order | VAN009116 |
| Blanket Purchaser Order | UM1006434 |
| Blanket Purchaser Order | GAD007014 – Supersedes COT002134 |
| Blanket Purchaser Order | ADR009751 |

## EXHIBIT B – INVENTORY

## EXHIBIT C – PENDING LITIGATION

**Spec Technologies Inc. vs. Instaset Plastics Company, LLC
d/b/a Instaset Plastics Corporation
Case No. 2022-002719-CB**


**[PENDING DISMISSAL]**

**EXHIBIT D – SALE ORDER**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

INSTASET PLASTIC COMPANY, LLC,

Debtor.

Case No.

Chapter 11

Hon.

---

## ORDER GRANTING DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 363(b) and (f) AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6003, 6004, AND 9014 AND L.B.R 6004-1 AND 9014-1 FOR ENTRY OF AN ORDER (1) APPROVING THE SALE OF PROPERTY OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS THROUGH A PRIVATE SALE AND TRANSFERRING LIENS TO PROCEEDS OF SALE; (2) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; AND (3) GRANTING RELATED RELIEF

This matter is presented on the Debtor's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9014 and L.B.R. 6004-1 and 9014-1 (1) Approving the Sale of Property Outside the Ordinary Course of Business Free and Clear of Liens, Claims, Encumbrances and Interests through a Private Sale and Transferring Liens to Proceed of Sale; (2) Establishing Procedures for the Assumption and Assignment of Executory Contracts; and (3) Granting Related Relief, Including a Waiver of Federal Rule of Bankruptcy Procedure 6004(g) (the "Motion"). The Court has

considered the Motion and the matters reflected in the record of the hearing held on the Motion, if any. It appears that the Court has jurisdiction over this proceeding; that this is a core proceeding; notice of this Motion has been provided to those entitled to receive service; the relief sought in the Motion is in the best interests of Instaset Plastics Company, LLC, Debtor and Debtor-in-Possession ("IPC" or "Debtor"), its estate and creditors; and good and sufficient cause exists for such relief.

**NOW THEREFORE,**

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. **Findings and Conclusions**. The Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 are made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. **Statutory Predicates.** The statutory predicates for the relief requested in the Motion are Sections 105, 362, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, and L.B.R. 6004-1 and 9014-1 (E.D. Mich).

C. **Opportunity to Object.** A reasonable opportunity to object or be

heard regarding the requested relief has been afforded to all interested persons and entities.

D. **Business Justification.** The Debtor has demonstrated a sufficient basis and compelling reasons for entering into the Clarion Purchase Agreement and selling the Purchase Assets under section 363 of the Bankruptcy Code and for assuming and assigning the Designated Contracts under section 365 of the Bankruptcy Code. Such action is an appropriate exercise of the Debtor's business judgment and in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

E. **Highest or Otherwise Best Offer.** The total consideration provided by Clarion for the Purchased Assets is the highest or otherwise best offer received by the Debtor.

F. **Good Faith Purchaser.** The Clarion Purchase Agreement has been negotiated in good faith, at arm's length, and without collusion or fraud. The terms and conditions of Clarion Purchase Agreement, including the total consideration to be realized by the Debtor is fair and reasonable, and the Sale of the Purchased Assets and the assumption and assignment of the Designated Contracts are in the best interest of the Debtor, its creditors, and its estate. Clarion is a "good faith purchaser" of the Purchased Assets, entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to the sale and transfer of the

Purchased Assets. The terms defined in the Clarion Purchase Agreement are incorporated by reference in this Order.

G. The Clarion Purchase Agreement was not controlled by an agreement between potential purchasers within the meaning of section 363(n) of the Bankruptcy Code. The Debtor and Clarion have not engaged in any conduct that would cause or permit the Sale to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. Clarion is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

H. Clarion will be acting in good faith in consummating the Sale at any time on or after entry of this Order, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d). Clarion is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

I. **Free and Clear.** The Sale and the transfer of the Purchased Assets to Clarion will be, as of the closing of the Sale (the "Closing"), a legal, valid, and effective transfer of the Purchased Assets, and such transfer vests or will vest Clarion with all right, title, and interest of the Debtor to Clarion free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), interests, and encumbrances, including claims for successor and/or alter-ego liability with any liens, claims, and encumbrances including claims for successor and/or alter-

ego liability to attach to the consideration to be received by the Debtor in the same priority and subject to the same defenses and avoidability, if any, as of the Closing. Therefore, the Sale contemplated by the Clarion Purchase Agreement is in the best interests of the Debtor, its estate and creditors, and all other parties in interest.

J.     **Satisfaction of 363(f) Standards.**   The Debtor may sell the Purchased Assets free and clear of all liens, claims, and encumbrances, because, with respect to each creditor asserting a lien, claim, or an encumbrance, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of liens, claims, and encumbrances who did not object or who withdrew their objections to the Motion are deemed to have consented to the Motion and Sale of the Purchased Assets to Clarion pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims, or encumbrances who did object fall within one or more of the other Sub-Sections of section 363(f) of the Bankruptcy Code and are adequately protected by having their liens, claims, and encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such holders allege a lien, claim, or an encumbrance, in the same order of priority, with the same validity, force, and effect that such holder had prior to the Sale, and subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

K.  **No Voidable Transfer.**  The Sale is not for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

L.  **Fair Consideration.**  The consideration for the Sale constitutes reasonably equivalent value and fair consideration (as those terms are defined in the Uniform Voidable Transfer Act and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States and the State of Michigan. The Clarion Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets. Approval of the Clarion Purchase Agreement and the consummation of the Sale are in the best interest of the Debtor, its estates, its creditors, and all other parties in interest.

M.  **Compliance with Bankruptcy Code.**  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code and all of the applicable requirements of such Sections have been or will be complied with in respect of the Sale as of the Closing.

N.  **Sale Not a Sub Rosa ]Plan.**  The Sale of the Purchased Assets outside of a plan of reorganization pursuant to the Clarion Purchase Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly

dictates the terms of a plan of liquidation for the Debtor. The Sale does not constitute a *sub rosa* chapter 11 plan.

O. **Time is of the Essence.** Time is of the essence in consummating the Sale. In order to maximize the value of the Purchased Assets, it is essential that the Sale occur within the time constraints set forth in the Clarion Purchase Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

P. The Sale contemplated by the Clarion Purchase Agreement is in the best interests of the Debtor and its estate, creditors, interest holders, and all other parties in interest herein.

**IT IS HEREBY ORDERED THAT:**

1. **Relief Granted.** The Motion shall be, and hereby is, GRANTED in its entirety, subject to the terms of this Order.

2. **Objections Overruled.** All objections and responses, if any, to the Motion, this Order, the Sale, or the relief granted herein that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3. **Approval.** The Clarion Purchase Agreement and the Sale are hereby approved and authorized in all respects, and the Debtor is hereby authorized and empowered, pursuant to section 363 of the Bankruptcy Code, to enter into, and to

perform its obligations under, the Clarion Purchase Agreement and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the Clarion Purchase Agreement.

4.   **Good Faith Purchaser.**   Clarion is a good faith purchaser of the Purchased Assets and Clarion is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to  section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Clarion Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Order or the Clarion Purchase Agreement, as the case may be.

5.   **Section 363(n) of the Bankruptcy Code.**   The Sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

6.   **Section 365(a) and 365(f) of the Bankruptcy Code.**   The following procedures are hereby approved by the Bankruptcy Court for the assumption and

assignment of the Designated Contacts ("Assumption and Assignment Procedures");

(a) Twenty-four (24) hours after the filing of this Motion, Debtor shall serve on the counterparties to the Designated Contracts a notice (the "Assumption and Assignment Notice") in the form attached as **Exhibit C** to the Motion containing the following information:

    (i) Debtor's intent to assume and assign the Designated Contracts to Clarion;

    (ii) The Cure Schedule;

    (iii) The cure amount Debtor's proposes to pay to each counterparty in compliance with the key requirements of Section 365 of the Bankruptcy Code (the "Pre-Petition Cure Amount");

    (iv) That the counterparties to the Designated Contracts shall file and serve any objections to the assumption and assignment of the Designated Contracts or the Pre-Petition Cure Amount on or before the Assumption/Assignment Objection Deadline, as described below; and

    (v) That for each Designated Contract for which an objection is timely received, a hearing will be held at the Sale Hearing, or such other date as the Court may designate, upon twenty-four (24) hours' telephonic, electronic or facsimile notice to the objecting party

(b) Any counterparty who fails to object by the Assumption/Assignment Objection Deadline shall be forever barred from objecting to the assumption and assignment of its respective executory contract; and

(c) Debtor will make cure payments, if any, within thirty (30) days after the date of the closing of the sale of the Purchased Assets.

7. **Authorization of Performance by the Debtor.** The Debtor is

authorized to fully perform under, consummate, and implement the terms of the Clarion Purchase Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Clarion Purchase Agreement, this Order, and the Sale, including, without limitation, deeds, assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by Clarion for the purpose of assigning, transferring, granting, conveying, and conferring to Clarion, or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtor's obligation as contemplated by the Clarion Purchase Agreement, without any further orders of the Court.

8. **Valid Transfer.** Effective as of the Closing, the sale of the Purchased Assets by the Debtor to Clarion shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and vests Clarion with all right, title, and interest of the Debtor in and to the Purchased Assets, free and clear of all liens, claims, and encumbrances, pursuant to § 363(f) of the Bankruptcy Code.

9. **Free and Clear.** Upon the Closing, the Debtor shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b), and 363(f) of the Bankruptcy Code, to sell the Purchased Assets to Clarion. The Sale of the

Purchased Assets to Clarion vests Clarion with all right, title, and interest of the Debtor in the Purchased Assets free and clear of any and all liens, claims, encumbrances, and interests, including claims for successor and/or alter-ego liability, with all such liens, claims, encumbrances, and interests, including claims for successor and/or alter-ego liability to attach only to the proceeds of the Sale of the Purchased Assets with the same priority, validity, force, and effect as they had in or against the Purchased Assets on the Petition Date. The Motion is deemed to provide sufficient notice as to the sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and interests, including claims for successor and/or alter-ego liability, in accordance with Local Rule 6004-1. Following the Closing, no holder of any liens, claims, encumbrances, and interests, including claims for successor and/or alter-ego liability, against the Purchased Assets may interfere with Clarion's use and enjoyment of the Purchased Assets based on or related to such liens, claims, encumbrances, and interests, including claims for successor and/or alter-ego liability, and no interested party may take any action to prevent, interfere with, or otherwise enjoin consummation of the Sale.

10. All proceeds of the Sale less any standard closing costs assessed against the Debtor, will be placed in an escrow account with Debtor's counsel, Strobl Sharp PLLC, until the time of confirmation of Debtor's plan of liquidation (the "Escrow Account") or further order of this Court. Upon the entry of an order

directing the distribution of the sale proceeds, Strobl Sharp PLLC, acting as escrow agent, will distribute funds pursuant to such order.

11.     The provisions of this Order authorizing the Sale of the Purchased Assets free and clear of liens, claims, and encumbrances shall be self-executing, and neither the Debtor, nor Clarion shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

12.     **Direction to Creditors.**  On the date of the Closing (the "Closing Date"), each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its liens, claims, and encumbrances on the Purchased Assets, if any, as such liens, claims, and encumbrances may otherwise exist.

13.     **Direction to Surrender Possession or Control.**  The Debtor is directed to surrender possession or control of the Purchased Assets to Clarion on the Closing Date or at such time thereafter as Clarion and the Debtor may mutually agree.

14.     **Transfer of Title and Interests.**  All of the Debtor's interest in the Purchased Assets to be acquired by Clarion under the Clarion Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in Clarion. Upon the occurrence of the Closing, this Order shall be

considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by Clarion under the Clarion Purchase Agreement and/or a Clarion Purchase Agreement or assignment transferring indefeasible title and interest in the Purchased Assets to Clarion.

15.   This Order (a) is effective as a determination that, as of the Closing, all liens, claims, encumbrances, and interests, including claims for successor and/or alter-ego liability, have been unconditionally released, discharged and terminated as to the Purchased Assets, and that the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Clarion Purchase Agreement.

16.   **No Bulk Sales.**  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Purchased Assets.

17.   **Amendments.**  Subject to the terms of the Clarion Purchase Agreement, the Clarion Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and Clarion, without further action or order of the Court; *provided, however*, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Clarion Purchase Agreement and any related agreements. Any material modification, amendment, or supplement to the Clarion Purchase Agreement must be approved by Order of the Court following a motion on notice to all interested parties.

18.   **Failure to Specify Provisions.**  The failure specifically to include any particular provisions of the Clarion Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor, and Clarion that the Clarion Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

19. **Binding Order.** This Order and the Clarion Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor and Clarion, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor's estate or any trustee appointed in a chapter 7 case if the Debtor's cases are converted from chapter 11 to a chapter 7 proceeding, all creditors of the Debtor (whether known or unknown), all non-Debtor parties to any contracts, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets. The Clarion Purchase Agreement and Sale shall not be subject to rejection or avoidance under any circumstances. This Order and the Clarion Purchase Agreement shall inure to the benefit of the Debtor, its estate, its creditors, Clarion, and Clarion respective successors and assigns.

20. **No Stay of Order.** Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Time is of the essence in closing the Sale referenced herein, and the Debtor and Clarion intend to close the Sale on or before

October 31, 2022. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

21. **Lift of Automatic Stay.** If and to the extent that section 362 may be applicable to a particular action in connection with the Clarion Purchase Agreement and Sale, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Court, to allow Clarion to deliver any notice provided for in the Clarion Purchase Agreement and allow Clarion to take any and all actions permitted under the Clarion Purchase Agreement in accordance with the terms and conditions thereof.

22. **Retention of Jurisdiction.** The Court shall retain jurisdiction to (a) interpret, implement, and enforce the terms and provisions of this Order and the Clarion Purchase Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, (b) to decide any disputes concerning this Order and the Clarion Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Clarion Purchase Agreement and this Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature and extent of the Purchased Assets, and all issues and disputes arising in connection with the relief authorized herein,

inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims, and Encumbrances.

23. **Subsequent Plan Provisions.** Nothing contained in the chapter 11 plan confirmed in the Debtor's chapter 11 case (including any order entered after any conversion of the Debtor's case into a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Clarion Purchase Agreement or this Order.

24. **Further Assurances.** From time to time, as and when requested by any party to the Clarion Purchase Agreement, and subject to the terms of such Clarion Purchase Agreement, each such party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, vest in Clarion right, title, and interest in and to the Purchased Assets.

25. **Governing Terms.** To the extent this Order is inconsistent with any prior order or pleading in the chapter 11 case, the terms of this Order shall govern. To the extent there is any inconsistency with between the terms of this Order and the terms of the Clarion Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

**EXHIBIT E**
**SELLER OWNED END OF ARM TOOLING**

End Of Arm Tooling associated with the following Parts:

- 3371-3384
- 3523
- 3524
- 3556
- 3557
- 3558
- 3559
- 3560
- 3619-3620